## No. A-CV-05-84

# Court of Appeals of the Navajo Nation

The Navajo Election Commission and the
Navajo Board of Election Supervisors,
The Navajo Nation, *Appellees,*

*vs.*

Raymond L. Lancer, *Appellant*
Decided September 17, 1985

## OPINION

*Before McCabe, Chief Justice, Tso and Walters, Associate Justices.*

*Samuel Pete, Esq., Window Rock, Arizona for Appellant; Donna Bradley, Esq., Window Rock, Arizona for Appellees.*

The appeal in this matter is from a decision of the Navajo Election Commission / Board of Election Supervisors (hereafter Board) on February 1, 1984.

Chichiltah Chapter elected chapter officers on September 6, 1983. Lewis Begay and Raymond Lancer were on the ballot as candidates for chapter president. Mr. Begay was elected by a vote of 262 to 246.

On September 8 or 9, 1983, Mr. Lancer filed an election contest.

The statement of the appellant contesting the election set forth the following irregularities:

1. Misconduct of candidate
2. Misconduct of poll officials
3. Shortage of ballots
4. Voting irregularities
5. Coercion of voters
6. Counting irregularities
7. Certain voters denied right to vote

On October 5, 1983, the Navajo Election Commission voted to have a re-election for chapter president. The decision was based upon the short-

*59*

age of ballots at the September election. On October 14, 1983, the Court of Appeals restrained the Chichiltah Chapter from inducting a president and ordered the Board to hold a formal hearing on the election contest petition as provided in the Board's Rules and Regulations.

On November 14, 1983, the formal hearing was conducted. On January 28, 1984, the Board found the September 6, 1983, chapter election to be fair and voted to certify Lewis H. Begay as Chichiltah Chapter President. The decision was put in writing on February 1, 1984. On February 3, 1984, Raymond Lancer filed his Notice of Appeal.

At the hearing appellant withdrew the allegation of coercion of voters. Appellant also admitted in his Brief on Appeal that he was not able to present adequate evidence on the allegations of voting irregularities and counting irregularities. The shortage of ballots was stipulated to by both parties. As to the other allegations the Board found that the appellant had not presented sufficient evidence to show either that irregularities or misconduct occurred or that any alleged irregularities or misconduct affected the result of the election or affected the fairness of the election.

Under *Nakai v. MacDonald,* 1 Nav. R. 107 (1975), and under the Board's Rules and Regulations for Disputes Arising on Local Chapter Elections, the Court of Appeals may review a decision of the Board to determine whether the decision is:

1. In violation of applicable provisions of the Constitution and laws of the United States of America;

2. In violation of the Navajo Tribal Code; or

3. Unsupported by the evidence contained in the transcript submitted on appeal.

The Court of Appeals finds that the issues of violations of the U.S. Constitution and the Tribal Code were not raised by the appellant. Therefore, the Court will consider only whether the decision of the Board was supported by the evidence.

The Court finds that based upon the briefs of the parties, the transcript of the hearing, and the decision of the Board, only one allegation was established by sufficient evidence. That is the allegation of a shortage of ballots. This lack of ballots resulted in there being a period of time when no one could vote.

Once an allegation has been proven or established, however, the one contesting the election must then show by sufficient evidence that the misconduct or irregularity actually changed the result of the election or prevented a fair election. *Williams v. Navajo Election Commission,* 5 Nav. R. 25 (1985), *Johnson v. June,* 4 Nav. R. 79 (1983).

In the present case the Board found that appellant did not show that the result of the election was changed or that the election was substantially unfair. The Board stated in its opinion that "There was no evidence presented by petitioner which specifically identified the names or numbers of registered voters that were turned away and, in fact, did not stay or come back to vote when the new ballots arrived. No evidence was presented that the poll officials did *not* inform voters that the absence of ballots was only temporary and that they should stay or return at 6:30 p.m., the estimated time of arrival for the new ballots. We can only assume that the trained poll officials did the correct thing by relaying the approximate time of arrival of new ballots to the voters and by allowing all those that were in line at the time the polls closed temporarily to cast their ballots." Upon a review of the record, the Court must agree with the Board that appellant did not establish that the shortage of ballots affected the outcome of the election.

When the appeal was filed in this matter the Court granted a Stay of Execution. Upon a motion by the Board and further consideration by the Court, the Stay was dissolved, the Court stating that the proper writ would have been a restraining order to prohibit the Board from certifying the election until a final disposition of the matter.

The decision of the Board of Election Supervisors in the within matter is hereby affirmed.